## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**

                                        **CASE NO: 0:18-cr-60017-BB**

v.                                                 **JUDGE BETH BLOOM**

**PHILLIP HYLANDER,**

                Defendant.

_____/

## DEFENDANT'S EMERGENCY MOTION FOR
## MODIFICATION OF SENTENCE TO HOME CONFINEMENT

Defendant, Phillip Hylander, by and through his undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3582(c)(1), for an order modifying his sentence to home confinement with electronic monitoring. Due to a convergence of *extraordinary and compelling* reasons caused by the rapidly-expanding COVID-19 Coronavirus, Hylander's advanced age, and his pre-existing medical conditions that place him in a high-risk category of potentially life-threatening complications should he contract the virus.

Hylander requests that he be permitted to finish the remaining portion of his sentence under **home confinement with electronic monitoring**. This modification is necessary to protect Hylander's health, given his high-risk status, and the inability of the BOP to implement effective measures to prevent communal transmission of COVID-19.

INTRODUCTION

On March 11, 2020, the World Health Organization ("WHO") classified COVID-19 as a pandemic[1], and on March 13, 2020, President Donald Trump declared the pandemic to constitute a national emergency[2]. Across the United States and around the world, governments are ordering the shutdown of all non-essential business and mandating that all people shelter in place at home, especially those who are elderly or with compromised immune systems.

According to the CDC, people who suffer from heart disease, lung disease, diabetes, and asthma are at higher risk of getting very sick from COVID-19.[3] As of now, there is no known treatment and a vaccine is months, if not years, away.

The BOP[4], along with corrections systems across the country, have acknowledged that the risks of rapid transmission of contagion in the tight quarters of prisons and jails present significant challenges to keeping inmates and staff safe and healthy. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and such individuals "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[5] Members of the United States Senate and House of Representatives, recognizing that federal prisons are at extreme risk of becoming

---

[1] *See Coronavirus: COVID-19 Is Now Officially A Pandemic, WHO Says*, NPR (Mar. 11, 2020), https://www.npr.org/sections/goatsandsoda/2020/03/11/814474930/coronavirus-covid-19-is-now-officially-a-pandemic-who-says.
[2] *Trump Declares Coronavirus National Emergency, Says He Will Most Likely Be Tested*, Reuters (Mar. 13, 2020), https://www.reuters.com/article/us-health-coronavirus-usa-emergency/trump-declares- coronavirus-national-emergency-says-he-will-most-likely-be-tested-idUSKBN2102G3.
[3] *See Are You at Higher Risk for Severe Illness?*, CDC.gov, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html.
[4] *See* Fed. Bureau of Prisons, Program Statement 6190.04: Infectious Disease Management (2014), *available at* https://www.bop.gov/policy/progstat/6190_004.pdf.
[5] See Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (Mar. 2, 2020), https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_ and_legal_experts.pdf.

"epicenters of the COVID-19 pandemic," have urged the BOP and the DOJ to release vulnerable patients, specifically those "who are 50 years old and older, and who suffer from chronic illnesses … that make them vulnerable to COVID-19 infection."[6]

This past week, United States Attorney General, William Barr, sent a Memorandum[7] to the Federal Bureau of Prisons directing the use of Home Confinement as a tool for combatting the spread of COVID-19 in order to protect the health and safety of all inmates.

Hylander, is sixty-six (66) years old. He has chronic hypertension, edema, GERD, stomach ulcers, high cholesterol, is pre-diabetic and obese. He falls within the demographic of those most highly exposed to COVID-19 disease and fatality according to guidance provided by the Centers for Disease Control and Prevention (CDC).[8]

ARGUMENT

The Court, in its discretion, may recognize the extraordinary and devastating effect the COVID-19 pandemic may have on Hylander' health—perhaps even his life—as an appropriate "extraordinary and compelling reason" for granting this motion. *See United States v. Redd*, 2020 WL 1248493, at *8 ("[A] court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances").

---

[6] See, e.g., Letter from U.S. Senator Kamala D. Harris to Director of the BOP (Mar. 19, 2020), available at https://www.harris.senate.gov/imo/media/doc/Harris%20Letter%20to%20Carvajal%20(3.19).pdf; Letter from U.S. Congresswoman Karen Bass to Attorney General William P. Barr (Mar. 19, 2020), available at https://judiciary.house.gov/uploadedfiles/2020-03-19_letter_to_ag_barr_re_covid19.pdf.
[7] See, Memorandum from William Barr (April 3, 2020) available at https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000.
[8] See, e.g., The Justice Collaborative, Guidance on COVID-19 in Release Advocacy, available at http://thejusticecollaborative.com/wpcontent/uploads/2020/03/TJC_CoronavirusDefenseCourts_Onesheet_02.pdf.

Hylander filed an Emergency Request with the warden of FCI Jessup (the "Warden") to be released on Home Confinement based on the devastating impact a COVID-19 outbreak would have on his health and life. While an administrative remedies process exists, this process is timely and with Hylander's health and safety at stake, time is not on his side. The current situation allows Hylander to proceed immediately to the Court without requiring the exhaustion of administrative remedies. *see Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) ("Exhaustion is not required if pursuing those remedies would be futile.").

The Court's exercise of jurisdiction here would not infringe on the BOP's jurisdiction given the unprecedented and deadly risks COVID-19 poses to Hylander specifically. To require the BOP take it's time to decide whether Hylander should be placed on Home Confinement, including any subsequent administrative appeal is unworkable given the unprecedented health crisis. To wait any longer would be counterproductive, inefficient, and present a significant risk of severe illness or death to Hylander.

Similarly, we should not have to wait until there's an outbreak at FCI Jesup or Hylander contracts the illness. As a District Court pointed out, "*The Court is glad to hear that there are currently no reported cases of COVID-19 at [the prison], but is unsure what that means if people are not being tested. And, as the [prison's] management plan itself acknowledges, symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up. That's why the Bay Area is on lockdown. We don't know who's infected. Accordingly, the government's suggestion that [defendant] should wait until there is a confirmed outbreak of COVID-19 in [the prison] before seeking release . . . is impractical. By then it may be too late*." See *In re Manrique*, Case No. 19-mj-71055-MAG-1, 2020 WL 1307109, at *1 (N.D. Cal., Mar. 19, 2020).

4

FCI Oakdale is an unfortunate manifestation of the *Manrique* court's fears. Before an outbreak was reported, 30 inmates and staff contacted the virus, resulting in the death of a high-risk inmate. FCI Oakdale is proof the BOP cannot adequately address a facility outbreak and keep inmates safe, particularly high-risk inmates.

Considering the speed at which the COVID-19 pandemic is spreading around the nation, including within the BOP's own facilities, waiting for Hylander to go through the BOP's administrative appeals process could effectively doom him. Accordingly, the Court should find that Hylander has exhausted his administrative remedies or otherwise hold that the requirement to exhaust those remedies is waived.

The Memorandum from Attorney General William P. Barr issued guidance to BOP about the utilization of home confinement for prisoners due to COVID-19. While Department of Justice memoranda do not confer any substantive rights, the Guidance provides significant and helpful information that may aid the Court in reaching its determination. *See, e.g., United States v. McCoy*, 977 F.2d 706, 712 (1st Cir. 1992).

There is a strong likelihood that Hylander' contraction of COVID-19 could be fatal based on his age and medical issues. Hylander, is sixty-six (66) years old. He has chronic hypertension, edema, GERD, stomach ulcers, high cholesterol, is pre-diabetic and obese. Even under normal circumstances, these health conditions present progressive, chronic issues with severe co-morbidities and high mortality rates. But as noted previously, in these alarming times, his illnesses and diseases have been identified explicitly by the CDC as increasing a person's vulnerability to serious illness or death from COVID-19.

Courts around the nation are recognizing the risk COVID-19 poses to the vulnerable inmate population and are granting appropriate relief. For example, a court in the District of Nevada

modified terms of intermittent confinement due to COVID-19. *See United States v. Barkman*, No. 19-CR-52 (RCJ) (D. Nev. Mar. 22, 2020) (D.E. 21). Similarly, a court in the Northern District of California recently granted a defendant's motion for reconsideration regarding his release pending extradition to Peru. *See In the Matter of the Extradition of Alejandro Toledo Manrique*, No. 19-mj-71055-MAG-1, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020). The court began its analysis by recognizing these "extraordinary time[s]" and the measures being taken by local and national governments to contain the COVID-19 pandemic. *Id.* at *1. Although the jail where the defendant was confined had prepared a plan to manage the COVID-19 pandemic, the court noted that the jail was not testing inmates, and waiting for the first confirmed case of COVID-19 could be too late for the elderly defendant. *Id.* Further, even though the court recognized that the defendant posed a flight risk, the court imposed several conditions to mitigate that risk and ordered the defendant to be released. *Id.* at *2.

In another example, a court in the Southern District of New York granted a defendant's emergency motion for reconsideration of denial of bail and ordered the defendant released with conditions. *See United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020). The court noted that, since the initial bail hearing, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent" and that while "there is not yet a known outbreak among the jail and prison populations, inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop." *Id.* (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007)).

While a release to home confinement constitutes an extraordinary request, the action is warranted, given the unique circumstances currently being experienced nationwide. Understanding the gravity of the pandemic and the fatal consequences of inaction, courts are

extending extraordinary relief. *See Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "in light of the rapidly escalating public health crisis"); *United States v. Perez*, ECF No. 62, Case No. 1:19-cr-297 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, ECF No. 2798, Case No. 15-cr-95 (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Matthaei*, ECF No. 30, Case No. 1:19-cr-243-BLW (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"). Extraordinary times require atypical actions.

      U.S.S.G. § 5C1.1 considers one day of home detention a substitute punishment for one day of imprisonment. Home confinement can be imposed pursuant to a criminal conviction and is designed to either punish or rehabilitate the convict.

      Hylander has no history of violence and poses no danger to the community. Hylander had no criminal history prior to the offense and has accepted responsibility and has already served a portion of his sentence in prison. A modification of his incarcerative sentence, to allow it to be served

7

under home confinement with electronic monitoring and internet restrictions, would provide punishment for his offense and protect the public. Even the Guidelines contemplate that home confinement may be sufficient for the elderly or infirm. *See* U.S.S.G. 5H1.1 ("Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.").

While Mr. Hylander undoubtedly committed a serious crime, it does not warrant exposure to a deadly virus and the potential loss of his life. Home confinement with electronic monitoring will serve the purposes of punishment and retributivism, while protecting the community, protecting Mr. Hylander's health and helping mitigate the outbreak of COVID-19 in BOP Facilities.

If the Court grants Hylander' request, he will live at his home with his Wife and brother-in law. Hylander' risk of COVID-19 transmission is significantly reduced at home compared to a facility containing hundreds of inmates plus BOP support staff. He will be under home confinement with electronic monitoring. His family has the means to transport him from FCI Jessup to his home and to pay for the cost of electronic monitoring and any other monitoring technology that this Court or the government requires of him. It is undisputed that the conditions under which Hylander would be confined would present a lower risk of contracting COVID-19 than he faces in his current BOP facility.

Pursuant to Local Rule 88.9, undersigned counsel conferred with AUSA Catherine Koontz regarding the relief sought in this motion. According to Ms. Koontz, the government objects, as at this time there is no active outbreak at the institution where the defendant is incarcerated. The defendant hopes that the relief sought in this motion is not premised on the "no

active outbreak" standard when ruling on this motion.

## CONCLUSION

For all the foregoing reasons, the defendant, Phillip Hylander respectfully requests that the Court grant his motion and modify his sentence to **home confinement with electronic monitoring** based on extraordinary and compelling reasons.

Dated: April 10, 2020

RESPECTFULLY SUBMITTED,

**LAW OFFICES OF RON M. KLEINER**
1717 Southeast 4th Avenue
Fort Lauderdale, FL 33316
By: _s/ Ron M. Kleiner_
Ron M. Kleiner, Esquire
Florida Bar No. 115139
Tel: 954-540-0170
kleinerlawoffice@gmail.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true copy of the foregoing Notice has been electronically filed with the Clerk of the Southern District of Florida using the Court's CM/ECF system and sent to the office of the Assistant US Attorney, on this 10th day of April 2020.

**LAW OFFICES OF RON M. KLEINER**
1717 Southeast 4th Avenue
Fort Lauderdale, FL 33316
By: *s/ Ron M. Kleiner*
Ron M. Kleiner, Esquire
Florida Bar No. 115139
Tel: 954-540-0170
kleinerlawoffice@gmail.com