UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cr-60017-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

PHILLIP HYLANDER,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Philip Hylander's Motion for Compassionate Release, or in the Alternative, Second Motion for Modification of Sentence to Home Confinement, ECF No. [63]. The Government filed its Response, ECF No. [66], to which Defendant filed a Reply, ECF No. [69]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.    BACKGROUND**

    **A.    Procedural History**

On April 10, 2020, Defendant filed an initial Emergency Motion for Modification of Sentence to Home Confinement ("First Motion"), ECF No. [57]. The Government filed a Response ("First Response"), ECF No. [60], opposing the Motion on the grounds: (1) Defendant had served less than one-third of his sentence (20 of 63 months), *see* First Resp. at 2; (2) Defendant failed to "cite to any presumptive positive cases" at his detention center, FCI Jessup, *id.* at 3; and (3) FCI Jessup was otherwise equipped to respond to the COVID-19 health crisis, *see id.*

The Court entered an Order ("First Order"), ECF No. [62], denying Defendant's Motion. The Court noted Defendant is 66-years old, obese, and suffers from several medical conditions,

including chronic hypertension, edema, gastroesophageal reflux disease ("GERD"), stomach ulcers, and high cholesterol. *See id.* at 4. Nevertheless, the Court noted there was no indication Defendant's detention center, FCI Jesup, was similarly situated to detention centers experiencing COVID-19 outbreaks. *See id.* at 5. The Court also considered whether Defendant posed a danger to the community and others under 18 U.S.C. section 3142(g). *See id.* Concluding he did, the Court reasoned Defendant pleaded "guilty to receipt of child pornography," "admitted that he had been downloading child pornography for several years," and his release plan proposed he be released to "precisely the location in which the offense for which he was convicted was committed," thus presenting "a concern that Defendant will reoffend." *See id.* at 5–6. As to the 18 U.S.C. section 3553(a) factors, the Could noted Defendant had "served less than one-third" of his sentence and presented no "other basis, other than his underlying health conditions, to persuade the court that its consideration of the [section] 3553(a) factors since sentencing should be modified." *Id.* at 6.

In the instant Motion, Defendant argues circumstances have changed at FCI Jesup, as "there have been hundreds of new cases of COVID-19," there, and one inmate has died. Mot. at 3, *see also* https://www.bop.gov/resources/news/pdfs/20200723_press_release_jes.pdf. Defendant also informs the Court he has kidney disease, a condition Defendant did not present to the Court in his First Motion or First Reply, ECF No. [61].

The Government opposes the motion, arguing the status of the COVID-19 outbreak at FCI Jesup is not out of control, *see* Resp. at 2, and the Warden denied Defendant's emergency request for home confinement, evidencing the "facility apparently believed they [sic] were able to properly protect Defendant from the virus." *Id.* at 4.

      B.     **SARS-CoV-2**

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting

more confirmed cases of COVID-19 and resulting deaths than any other country, with almost 7,787,548 confirmed cases and over 214,000 reported deaths as of October 13, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Oct. 13, 2020).

prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.     DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

As with his First Motion, Defendant seeks relief under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

4

> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction . . . .
> > . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover,

5

Case 0:18-cr-60017-BB   Document 68   Entered on FLSD Docket 10/18/2020   Page 6 of 7

Case No. 18-cr-60017-BLOOM

Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

In its First Order, the Court applied the foregoing analytical framework to Defendant's case and found both the section 3142(g) factors and section 3553(a) factors weighed against granting Defendant's First Motion. *See* First Order at 5–6. With respect to the instant Motion, the Court makes the same conclusion.

As a preliminary matter, Court recognizes that FCI Jesup has experienced a marked increase in COVID-19 cases, calling into question the efficacy of the Bureau of Prison's response to the health crisis. Nevertheless, the Bureau of Prisons has set forth a COVID-19-management plan including quarantine and social-distancing protocols. *See* Resp. at 3. As to Defendant's medical conditions, while severe, Defendant has not supplied the Court with medical records documenting the same, or made a showing that he has been unable to receive proper treatment at FCI Jesup. While Defendant notes there is no licensed medical doctor on site, *see* Mot. at 3, Defendant does not claim he is unable to receive proper medical care if needed.

Moreover, Defendant presents no argument to the Court that would alter its previous finding that Defendant remains a danger to the community. Aside from serving less than one-half of his sentence, there is no evidence Defendant has engaged in educational or rehabilitative courses. *Compare with United States v. Blake*, No. 15-CR-80018, 2020 WL 4677309, at *1 (S.D. Fla. Aug. 12, 2020) (finding the percentage of his sentence the defendant served, and the defendant' completion of educational courses, contribution to the detention-center community, and

lack of disciplinary history militated against a finding the defendant was a danger to the community).

### III. CONCLUSION

The Court remains sympathetic to Defendant's health conditions and cognizant of the deterioration of circumstances at FCI Jesup. Nevertheless, based on the record presently before it, the Court cannot deviate from its previous finding.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant Philip Hylander's Motion for Compassionate Release, or in the Alternative, Second Motion for Modification of Sentence to Home Confinement, **ECF No. [63]** is **DENIED without prejudice**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 16, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record